## NATIONAL LIBERTY INS. CO. OF AMERICA v. MERKUR et al.

### No. 103.

District Court, S. D. Texas, Houston Division.

July 21, 1939.

Bryan & Bryan, of Houston, Tex., for plaintiff.

Gammage, Gammage & Bauer, Earl W. Gammage, Wagner & Wagner, Meyer C. Wagner, A. Milton Vance, Alvin S. Romansky, and Campbell, Myer & Eastham, all of Houston, Tex., and E. E. Berwald, of Dallas, Tex., for defendants.

KENNERLY, District Judge.

Prior to December 29, 1938, Samuel Merkur was in the business of buying, selling, storing, repairing, etc., furs, in the City of Houston. He did business as the New York Fur Company. On that date, his entire stock of furs and all the furs stored with him or being repaired by him were destroyed by fire. He carried a policy of fire insurance with the National Liberty Insurance Company of America, Plaintiff herein, in the sum of $10,000. Such Policy was for the benefit not only of Merkur, but of the customers having furs stored with him or being repaired by him, etc. After the fire, he reached an agreement with Plaintiff, whereby such Plaintiff agreed to pay the sum of $5,000 in full settlement of the Policy, but before the $5,000 was paid, various persons set up claims thereto, i. e., one who claimed under an assignment of the policy or its proceeds from Merkur, three Creditors who sued Merkur and served writs of garnishment on the Plaintiff, and some General Creditors. Thereupon, Plaintiff filed this interpleader suit under Subdivision 26 of Section 41, Title 28, U.S.C.A., making parties defendants all known persons claiming the $5,000, besides many persons whose names it is alleged are unknown, and paid the $5,000 into Court. Process was issued for, and served on, the persons named in Plaintiff's Complaint, and later, on Order of the Court, notice by publication in a local newspaper was given to all persons claiming any right, title, or interest in and to said fund.

The facts show Jurisdiction.

At the hearing, the following filed claims against the fund in Court:

(a) H. Seltzer, claiming an assignment of the Policy of Insurance or the proceeds thereof.

(b) Houston National Bank, claiming garnishment lien on the fund.

(c) Rabinowitz & Reiner, Inc., claiming garnishment lien on the fund.

(d) Nicolis Bros., claiming garnishment lien on the fund.

(e) The following unsecured Creditors: Harry D. Schwartz, B. Katz & Son, Miller & Weisman, B. Ordover & Sons, Inc., M. Feldman & Bros., Inc., who claim no lien on the fund.

The facts are as follows:

(a) On August 22, 1938, Plaintiff, the National Liberty Insurance Company, issued to the New York Fur Company, Samuel Merkur, Proprietor, a Policy of Insurance for $10,000, covering his stock of merchandise, consisting principally of furs, fur coats, skins, trimmings, etc., in the City of Houston, Texas. The Policy covered also the goods of customers accepted for storage, alterations, repairs, cleaning, remodeling, etc. Under the wording of the Policy, it was to be in force until July 22, 1939, at noon.

(b) On December 29, 1938, the property covered by such Policy of Insurance was destroyed by fire. Plaintiff at first denied liability, but later a settlement was made with Merkur, by which Plaintiff agreed to pay $5,000. Because of persons claiming the fund so agreed to be paid, Plaintiff filed this suit as hereinbefore stated.

(c) At the time of and after the fire, Merkur was not possessed of property within the State of Texas subject to execution sufficient to pay his existing debts. Instead of paying his Creditors as much as possible, as most men would have done, he decided to utilize the $5000 fund which Plaintiff agreed to pay and a $1000 fund agreed to be paid him by another Insurance Company to purchase a home. His intent was to delay, hinder and defraud his Creditors. He was and is a married man and entitled to the homestead exemption under the Constitution and other Laws of Texas (Vernon's Ann.St.Tex.Const. art. 16, § 50; Vernon's Ann.Civ.St.Tex. art. 3832 et seq.). He consulted with counsel with respect to the matter, and negotiated with H. Seltzer, a real estate agent, looking to the purchase of suitable residence property in the City of Houston, to be used by him (Merkur) for a home and to be his homestead. He purchased from H. Seltzer and wife Lot 7 in Block 36 of the Washington Terrace Addition to the City of Houston, for a consideration of $7,100, of which $6,000 was to be cash and $1,100 was to be a vendor's lien note. The cash payment was to be made up by an assignment by Merkur to Seltzer of the Policy of Insurance hereinbefore described issued by Plaintiff, or the proceeds thereof amounting to $5,000, and $1,000 payable to Merkur by another Insurance Company. Such transaction was closed by Seltzer and Merkur as follows:

On February 22, 1939, H. Seltzer and wife made, executed and delivered to Merkur their General Warranty Deed of that date, conveying to him said property. They reserved the vendor's lien to secure the payment of Merkur's $1,100 Note. On the same date, Merkur made, executed and delivered to Seltzer his Note, secured by vendor's lien, for $1,100, payable in monthly installments as agreed. On the same date, Merkur made, executed and delivered to Seltzer a Deed of Trust, wherein Julian Weslow of Houston was named as Trustee to secure the payment and expedite the collection of the $1,100 Note, and on the same date, Merkur made, executed and delivered to Seltzer and wife an Assignment of such Policy of Insurance and the $5,000 proceeds thereof and a Policy of Insurance in another Company and the $1,000 proceeds thereof. Plaintiff received notice of such Assignment March 3, 1939.

(d) The Deed from Seltzer and wife to Merkur while made, executed and delivered by them to Merkur on February 22, 1939, was allowed by Merkur to remain in possession of his Attorney, Abe Levy, along with another unrecorded Deed from one Gordon and wife to Seltzer, under which Seltzer claimed. These two Deeds were not filed for record by Levy, Merkur's Attorney, until March 20, 1939, at 1 o'clock P. M.

Seltzer was living in the property at the time he sold and conveyed it to Merkur. He moved out and delivered possession to Merkur so soon as he could find a place to move to. Merkur took possession about the middle of March 1939, and he and his wife and two daughters have been since and are now in possession, occupying it as their home and claiming it as their homestead, under the Laws of Texas.

(e) The arrangement between Seltzer and Merkur was that the proceeds of the Policy issued by Plaintiff ($5,000) and the proceeds of the other Policy ($1,000) were to be paid over to Levy, the Attorney for Merkur, so that he could see to it that such part thereof as was necessary would be appropriated to the payment of an outstanding $4,900 lien against the property. Levy collected the $1,000 and kept it for some days, but finally paid it over to Seltzer. Why he did so is not very satisfactorily explained, except that if Seltzer is entitled to the fund in the Court, such sum is more than sufficient to pay off the outstanding lien.

(f) The Writ of Garnishment of the Houston National Bank was served on Plaintiff on March 8, 1939, at 1:24 P. M., and the Writ of Garnishment of Rabinowitz & Reiner, Inc., was served on Plaintiff on March 20, 1939, at 12:45 P. M., and the Writ of Garnishment of Nicolis Bros. was served on Plaintiff on March 24, 1939, at 10:30 A. M., and these three Creditors in the order named have a lien against the fund in Court, unless the title thereto, prior to the service of such garnishments, passed to Seltzer.

(g) The three Unsecured Creditors claim no lien and have no lien.

(h) There is no evidence that Seltzer had any notice or knowledge (and I find he did not) that Merkur, at or before the time of the Assignment of the Policy of Insurance to him, did not possess property within this State subject to execution sufficient to pay his existing debts. Nor did Seltzer know of Merkur's fraudulent intent to delay, hinder and defraud his Cred-

itors. I find also that the consideration paid by Seltzer for the policy and proceeds was a valuable one.

(i) A reasonable fee for the Attorneys for Plaintiff in this case is $500.

■ 1. In the argument at the Bar, Counsel for Seltzer and Counsel who were present for the Garnishment Creditors conceded that under Article 3996 and Article 3997 of the Texas Revised Civil Statutes of 1925 and Amendments (Vernon's Ann.Civ.St.Tex. arts. 3996, 3997), which are the Statutes with respect to fraud and fraudulent conveyances, a Debtor in Texas, entitled to a homestead and the homestead exemption under the Constitution and other Laws of Texas, may appropriate all or any part of his property to the purchase of a homestead, and that his Creditors may not prevent his doing so, even though such action is for the purpose of and results in hindering, delaying and defrauding his Creditors. The Texas Authorities bear this out. Chase v. Swayne, 88 Tex. 218, 30 S.W. 1049, 53 Am.St.Rep. 742; Thompson v. Railway Co., 45 Tex. Civ.App. 285, 100 S.W. 197; Southern Irrigation Co. v. Wharton Nat. Bank, Tex. Civ.App., 144 S.W. 701, 703, and cases there cited. The Garnishment Creditors, however, say that the facts show that the Assignment of the Policy and the proceeds thereof by Merkur to Seltzer was not in fact made on February 22, 1939, but on or about March 18, 1939, and after the service of all three of the Writs of Garnishment. A careful consideration of the evidence convinces me that this contention of the Garnishment Creditors is not well founded. I do not think the evidence either compels or would support a finding that the Assignment of the Policy of Insurance was not made, executed and delivered and did not become effective February 22, 1939. And I think that the other papers (the Deed, Note, Deed of Trust, etc.) were made, executed and delivered at the same time.

■ 2. I think and conclude that, without regard to the homestead question, Seltzer, under the facts found herein, is protected under Articles 3996 and 3997. He was a purchaser of the Policy, etc., for a valuable consideration and without notice of Merkur's financial conditions and of his intention to hinder, delay and defraud his Creditors.

■ 3. The Garnishment Creditors insist that Abe Levy, who took the acknowledgment of H. Seltzer and Virginia Seltzer to the Deed from them to Merkur, was the Attorney for Merkur, that the property conveyed was Seltzer's homestead, and no title passed by such Deed, and that, therefore, no title to the Policy passed to Seltzer on February 22, 1939, by its Assignment. I do not think the facts show Levy was disqualified, and if he was, it would not follow that for that reason no title passed by the Assignment at the time it was made, executed and delivered, i. e., February 22, 1939.

Let a Decree enter, directing the payment out of the fund in Court of all costs, including Court Reporter's fees, publication of notices, etc., and the payment of $500 Attorney's Fees to Plaintiff's Attorneys, and the payment of the balance to H. Seltzer.